UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| LOTOSHIA SHERVELL HOLLIS, ] | |
| ] | |
| Petitioner, ] | Civil Action No. |
| ] | 2:15-CV-08048-KOB |
| v. ] | |
| ] | Associated Criminal Case |
| UNITED STATES OF AMERICA, ] | 2:13-CR-0508-KOB |
| ] | |
| Defendant. ] | |

## MEMORANDUM OPINION

This matter comes before the court on Petitioner Lotoshia Hollis's *pro se* motion to vacate, set aside, or correct sentence under Title 28 U.S.C. § 2255. (Doc. 1). Ms. Hollis, a federal prisoner who pled guilty to conspiracy to defraud the government, contends that the court should vacate her sentence because of eight claims of ineffective assistance of counsel. (Doc. 1 at 4). The court will DENY seven of those claims that lack merit, and will RESERVE this matter for an evidentiary hearing *only* on Ms. Hollis's claim that her attorney failed to file an appeal as instructed.

## I. BACKGROUND

Ms. Hollis's § 2255 petition is narrow. She brings claims only for ineffective assistance of counsel—she does not challenge her plea, conviction, or sentence. Accordingly, the court will present only background information on Ms.

1

Hollis's criminal case relevant to ineffective assistance of counsel.

### A. Indictment & Written Plea Agreement

On December 27, 2013, a federal Grand Jury indicted Ms. Hollis and two others—Angela Gernial Bennett and Kennethea Leshelle Parks—for conspiracy to defraud the government by filing false claims for income tax refunds in violation of 18 U.S.C. § 286. (Case no. 2:13-cr-0508-KOB, "Crim. Doc.", Doc. 1 at 1). In addition, the Grand Jury indicted Ms. Hollis on 11 counts of filing false claims against the United States in violation of 18 U.S.C. § 287. (Crim. Doc. 1 at 4-5).

Attorney Katherine Luker represented Ms. Hollis in her criminal case. In a written plea agreement executed on July 22, 2014, Ms. Hollis agreed to plead guilty to the count of conspiracy to defraud the government. (Crim. Doc. 43). On motion of the United States, the court dismissed the 11 counts of filing false claims. (Crim. Doc. 67).

In the plea agreement, Ms. Hollis stipulated that she, Ms. Bennett, and Ms. Parks obtained personally identifiable information from others to file fraudulent tax returns. (Crim. Doc. 43 at 2-3). In 2009, Ms. Hollis and her confederates filed at least 30 false tax returns claiming more than $150,000 in refunds. (*Id.* at 3). In 2010, Ms. Hollis filed at least 118 false tax returns claiming refunds of $747,119. (*Id.* at 4-5).

The plea agreement provides one example of how Ms. Hollis carried out her

role in the criminal enterprise. Ms. Hollis obtained personally identifiable information from a person identified as L.G.W. III under the auspices that she would prepare his tax return on his behalf. Instead, she used L.G.W. III's information to file a fraudulent tax return for the benefit of the conspiracy. When L.G.W. III did not receive his tax refund, he confronted Ms. Hollis. Ms. Hollis advised him to be patient but then stopped communicating with him. (Crim. Doc. 43 at 4).

The plea agreement included an appeal waiver that stated:

I, Latoshia Shervell Hollis, hereby waive and give up my right to appeal my conviction and/or sentence in this case, as well as any fines, restitution, and forfeiture orders, the Court might impose. Further, I waive and give up the right to challenge my conviction and/or sentence . . . in any post-conviction proceeding, including, but not limited to, a motion brought under 28 U.S.C. § 2255.

(Crim. Doc. 43 at 9).

The appeal waiver included three exceptions. Ms. Hollis reserved the right to contest in an appeal or post-conviction proceeding any sentence imposed in excess of the statutory maximum, sentence imposed in excess of the guideline sentencing range, and claims of ineffective assistance of counsel. (Crim. Doc. 43 at 9).

### B. Sentencing

A probation officer prepared a presentence investigation report ("PSR") for Ms. Hollis. Using the 2014 Guidelines Manual, Ms. Hollis's advisory guideline

3

range was 100 to 120 months' imprisonment. Her guideline range included a two-level increase in offense level for being "an organizer, leader, manager, or supervisor of the criminal activity," U.S.S.G. § 3B1.1(c), because the PSR described Ms. Hollis as "the mastermind and main filer of false tax returns in this conspiracy and she also received larger proceeds from the crime . . . ." (PSR at ¶ 42).

Ms. Hollis objected to the two-level increase, asserting that her actions did not rise to the level of being an organizer, leader, manager, or supervisor of the criminal activity, and that she acted on instructions from other individuals not named in the conspiracy. (Doc. 56 at ¶ 2).

On January 12, 2015, this court conducted a sentencing hearing and overruled Ms. Hollis's objection to the two-level increase and adopted the PSR's recommendations. In doing so, the court found that Ms. Hollis's actions met the Guidelines standards for the "organizer, leader, manager, or supervisor" enhancement. The court sentenced Ms. Hollis to 100 months' imprisonment. (Crim. Doc. 67 at 1-2). Ms. Hollis did not appeal her conviction or sentence.

### C. Section 2255 Motion

Ms. Hollis timely brought her § 2255 motion on December 14, 2015. (Doc. 1). In it, she states "Ineffective Assistance of Counsel" as Ground One, and underneath Ground One lists eight "supporting facts":

4

1. failure to file an appeal as instructed;

2. failure to disclose favorable evidence;

3. failure to call mitigating witnesses at sentencing;

4. failure to follow "obvious and apparent leads" that implicated other members of the conspiracy;

5. failure to thoroughly investigate and present evidence against the "self-proclaimed leader of the conspiracy";

6. failure to submit exculpatory evidence;

7. failure to inform the court that the leader of the conspiracy had confessed to the leadership role; and

8. failure to procure a statement from the self-proclaimed leader of the conspiracy after that leader agreed to meet with counsel.

(Doc. 1 at 4). Utilizing its ability to construe *pro se* pleadings liberally, the court finds that each of these eight "supporting facts" is actually a separate ground for ineffective assistance of counsel.

In its concise response, the government argued that Ms. Hollis's petition fails simply because she does not state the facts supporting each of her eight grounds. (Doc. 5 at 4). The government does not specifically deny any of Ms. Hollis's allegations, stating that "there are insufficient assertions to allow the government to respond meaningfully to any of her claims." (*Id.*).

In her reply pleading, Ms. Hollis elaborated on her eight grounds. The court will present the details provided in her reply when the court independently address

each ground below. Although a petitioner generally may not add new claims for relief in a reply pleading, *see Farris v. United States*, 333 F.3d 1211, 1215 (11th Cir. 2003), the court will consider the issues that Ms. Hollis raises in her reply to provide her with the maximum opportunity to have her claims addressed on their merits.

## II. DISCUSSION

The court begins with the standard that Ms. Hollis *must* meet to prevail on any of her ineffective of counsel claims. Under the well-settled two-part test established in *Strickland v. Washington*, 466 U.S. 668 (1984), to show that she was deprived of her Sixth Amendment right to effective assistance of counsel, a petitioner must demonstrate that (1) her counsel's performance fell below an objective standard of reasonableness; *and* (2) she suffered prejudice because of that deficient performance. *Strickland*, 466 U.S. at 687-88, 692. To succeed, a petitioner must establish *both* prongs. And a petitioner cannot satisfy either of these two elements with conclusory or unsupported allegations. *Tejada v. Dugger*, 941 F.2d 1551, 1559 (11th Cir. 1991). Rather, the petitioner must allege "reasonably specific, non-conclusory facts that, if true, would entitle [her] to relief." *Aron v. United States*, 291 F.3d 708, 715 n.6 (11th Cir. 2002).

Under the first prong of the *Strickland* test—the "reasonableness" prong—the court must presume that petitioner's counsel acted reasonably. *Strickland*, 466

6

U.S. at 690; *Williams v. Head*, 185 F.3d 1223, 1228 (11th Cir. 1999). To overcome that presumption, a petitioner "must identify the acts or omissions of counsel that are alleged not to have been the result of reasonable professional judgment." *Strickland*, 466 U.S. at 690. If "some reasonable lawyer at the trial could have acted, in the circumstances, as defense counsel acted at trial," then counsel's performance did not fall below an objective standard of reasonableness. *Waters v. Thomas*, 46 F.3d 1506, 1512 (11th Cir. 1995) (*en banc*).

Under the second prong of the *Strickland* test—the "prejudice" prong—prejudice arises only if the petitioner shows "a reasonable probability [exists] that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694. "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.*

With the *Strickland* test in mind, the court will analyze each of Ms. Hollis's eight grounds of ineffective assistance of counsel.

### A. Ground 1: Failure to File an Appeal as Instructed

Ms. Hollis contends that she asked her counsel to file an appeal after the court sentenced her. (Doc. 1 at 4). In her reply, Ms. Hollis alleges specific facts of when and how she asked her counsel to appeal. Ms. Hollis asserts that, after sentencing, she asked counsel about what the prosecution thought about supposed evidence of the true leader of the conspiracy, and counsel "waved her hand in a

7

gesture and said, '[t]hey said it doesn't matter.'" (Doc. 7 at 2). Counsel then consulted with Ms. Hollis about her right to appeal and Ms. Hollis asked counsel to file an appeal. According to Ms. Hollis, counsel acknowledged that she would file an appeal. (*Id.*). On these factual allegations, as further explained below, Ms. Hollis is entitled to an evidentiary hearing as a matter of law.

The Supreme Court has "long held that a lawyer who disregards specific instructions from the defendant to file a notice of appeal acts in a manner that is professionally unreasonable" under the first prong of the *Strickland* test. *Roe v. Flores-Ortega*, 528 U.S. 470, 477 (2000) (citing *Peguero v. United States*, 526 U.S. 23, 28 (1999), and *Rodriquez v. United States*, 395 U.S. 327 (1969)). So, assuming the truth of Ms. Hollis's adequately asserted and undisputed allegation that she instructed counsel to file an appeal, counsel's failure to file an appeal was *per se* unreasonable and Ms. Hollis has satisfied the first element of the *Strickland* test. *Flores-Ortega*, 528 U.S. at 477. As discussed further below, counsel's failure to file an appeal as instructed is unreasonable even in the presence of an appeal waiver. *See Gomez-Diaz v. United States*, 433 F.3d 788, 793-94 (11th Cir. 2005).

Under the second element of the *Strickland* test, a lawyer's failure to file an appeal prejudices a defendant when "counsel's constitutionally deficient performance deprives a defendant of an appeal that he otherwise would have taken . . . ." *Flores-Ortega*, 528 U.S. at 484. There is no other requirement. Rather, to

8

show prejudice, "a defendant who shows that his attorney has ignored his wishes and failed to appeal his case need *only* demonstrate that, but for the attorney's deficient performance, he would have appealed." *Gomez-Diaz*, 433 F.3d at 792 (citing *Flores-Ortega*, 528 U.S. at 484).

In addition, a petitioner does *not* have to demonstrate the viability or merits of her potential appeal to establish that her lawyer's failure to file an appeal as instructed prejudiced her. *Flores-Ortega*, 528 U.S. at 486; *Montemoino v. United States*, 68 F.3d 416, 417 (11th Cir. 1995); *Gray v. U.S.*, 834 F.2d 957, 967 (11th Cir. 1987). This rule applies even if the petitioner pled guilty and agreed to an appeal waiver. *See Gomez-Diaz*, 433 F.3d at 793-94 (remanding for an evidentiary hearing because petitioner who pled guilty with an appeal waiver did not waive all of his appeal rights and did not have to demonstrate that his appeal would have fit one of the limited exceptions to his appeal waiver); *Martin v. United States*, 81 F.3d 1083, 1084 (11th Cir. 1996) ("[A] defendant is prejudiced where his attorney fails to file an appeal after being requested to do so, even after the defendant pled guilty. In this situation, the defendant is entitled to an out-of-time appeal, even without showing whether or not there are any viable grounds for such an appeal.").

Here, Ms. Hollis, with specific factual assertions of when and how she asked counsel to appeal, alleges that counsel deprived her of an appeal that she otherwise would have taken. So, assuming the truth of Ms. Hollis's allegations, she suffered

9

prejudice in that she did not receive the appeal she requested. *See, e.g.*, *Gomez-Diaz*, 433 F.3d at 792-94; *Flores-Ortega*, 528 U.S. at 483-86. The facts that Ms. Hollis pled guilty and waived her rights to appeal with limited exceptions do not affect the prejudice analysis. *See, e.g.*, *Gomez-Diaz*, 433 F.3d at 793-94; *Martin*, 81 F.3d at 1084.

Ms. Hollis, with specific factual allegations and without dispute from the government, contends that she instructed her counsel to file an appeal and her counsel did not do so, so the court must hold an evidentiary hearing to determine whether Ms. Hollis did in fact instruct her counsel to file an appeal. *See* 28 U.S.C. § 2255(b) ("Unless the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief, the court shall cause notice thereof to be served upon the United States attorney, grant a prompt hearing thereon, determine the issues and make findings of fact and conclusions of law with respect thereto."); *see also Gomez-Diaz*, 433 F.3d at 792 ("The district court erred in declining to hold an evidentiary hearing to establish the content of the communications between Petitioner and his attorney.").

The court will RESERVE Ground 1 for an evidentiary hearing.

**B.  Grounds 2-8**

Ms. Hollis's Grounds 2-8 revolve around one main contention: that Ms. Hollis's counsel did not properly utilize what Ms. Hollis considers to be evidence

10

that she was *not* the leader, organizer, or manager of the conspiracy. Rather, according to Ms. Hollis, an unindicted individual, Shauntasha Horton, was the leader of the conspiracy.

Ms. Hollis submitted this evidence with her reply pleading. First, she provided screenshots of two emails that she sent counsel on June 5, 2014. (Doc. 7 at 17-20). Both emails state, "Conversation with Shauntasha Horton regarding fraudulent tax returns," and appear to have an audio file attached, one titled "Incoming 2014-03," and the other titled "2052499413 Outg." (*Id.*). Ms. Hollis did not submit either of the two audio files, but she contends that Ms. Horton confesses to her leadership role in the conspiracy in the audio recordings. (Doc. 7 at 6).

Also with her reply pleading, Ms. Hollis submitted screenshots of a Facebook messaging conversation that she had with "Tasha Lovingthenewme," which Ms. Hollis contends is Ms. Horton's Facebook username. (Doc. 7 at 21-25). The Facebook messages show that Ms. Hollis asked Ms. Horton, "[w]ho is L.G.W. III?", and repeatedly asked Ms. Horton the name of Ms. Horton's cousin for whom Ms. Hollis had filed a tax return. (*Id.* at 21-22). Ms. Horton said that she did not know an "L.G.W." so she asked Ms. Hollis to tell her the person's name. Ms. Hollis responded, "I don't know a name. That's why I was asking you. Cause ALL THE information that I received was from YOU, Tonya, and Veronica.

11

These people I DON'T know personally or have NEVER met in my life." (*Id.* at 23). Ms. Hollis then accused Ms. Horton of implicating and "pointing the finger" at Ms. Hollis. Ms. Horton and Ms. Hollis then argued back and forth over who pointed the finger at whom. (*Id.* at 23-25).

### 1. *Ground Two: Failure to Disclose Favorable Evidence to the Court*

Ms. Hollis contends that counsel should have disclosed the Facebook messages and the audio recordings to the court at the sentencing hearing because the materials would have shown that Ms. Horton, not Ms. Hollis, was the leader of the conspiracy. (Doc. 1 at 4; Doc. 7 at 3-4). Ms. Hollis apparently claims that the materials would have convinced the court to sustain the objection to the offense level increase for being the leader of the conspiracy. Her claim fails.

The Facebook messages do not show what Ms. Hollis claims they show. At best, the Facebook messages demonstrate that Ms. Horton may have provided Ms. Hollis with personally identifiable information about taxpayers and perhaps implicated Ms. Hollis in the conspiracy. The Facebook messages do not suggest, even in the slightest, that Ms. Horton had any leadership role in the conspiracy.

In fact, the Facebook messages support Ms. Hollis's leadership role. Ms. Hollis *stipulated* that while she and others collected the personally identifiable information, she actually filed the tax returns in 2010 from an internet protocol address associated with her residence. (Crim. Doc. 43 at 4-5). The Facebook

12

messages show the same arrangement: Ms. Horton provided personally identifiable information to Ms. Hollis and Ms. Hollis then filed the tax return.

In addition, Ms. Hollis's allegation that Ms. Horton confessed to her leadership role in the conspiracy on the audio recordings fails as conclusory. The screenshots of the emails demonstrate one unremarkable fact: Ms. Hollis emailed two audio files to counsel. The screenshots do not provide any information about the content of the audio recordings, and the only information about the content of the recordings comes from Ms. Hollis's conclusory allegations. Without stating what Ms. Horton exactly said on the audio recordings, Ms. Hollis merely claims that the recordings show that Ms. Horton was the leader of the conspiracy. Ms. Hollis is not entitled to an evidentiary hearing on these allegations not supported by "reasonably specific, non-conclusory facts." *Aron*, 291 F.3d at 715 n.6.

And even assuming that Ms. Horton confessed to her leadership role in the conspiracy on the audio recordings, Ms. Horton's confession would *not* disqualify Ms. Hollis for the leader enhancement because more than one member of a conspiracy can be "an organizer, leader, manager, or supervisor." U.S.S.G. § 3B1.1, Application Note 4. The court found that Ms. Hollis qualified for the leader enhancement because she was the main filer of the tax returns and received larger proceeds from the crime. Even if Ms. Horton were a leader of the conspiracy, Ms. Hollis has not alleged that the audio recordings show that Ms.

13

Hollis was not the main filer of the tax returns or did not receive larger proceeds. So, again, Ms. Hollis has not provided specific non-conclusory facts to show that the audio recordings were favorable evidence and counsel did not act unreasonably by not submitting them to the court.

Because the Facebook messages were not favorable evidence, counsel acted reasonably by not presenting them to the court at the sentencing hearing. And Ms. Hollis fails to support a claim for ineffective assistance of counsel by relying on her conclusory allegations about the content of the audio recordings.

The court will DENY Ground 2.

### *2.    Ground 3: Failure to Call Mitigating Witnesses at Sentencing*

Ms. Hollis contends that her counsel was ineffective for failing to call mitigating witnesses at the sentencing hearing. (Doc. 1 at 4; Doc. 7 at 4). Her claim fails because she relies only on her conclusory allegation that counsel knew of mitigating witnesses.

Ms. Hollis alleges that she provided counsel with the names and contact information of witnesses who "had knowledge that Hollis was not the leader," though she does not specify this "knowledge." (Doc. 7 at 4). The witnesses included Ms. Horton and two unindicted individuals, Tanjanekia Lee and Roderick Hollis Wright, Jr., for whom Ms. Hollis provides to the court no other information besides their names. Notably, she does not allege what each of these witnesses

specifically knew or what they would have said if called to testify; how Ms. Hollis was not the leader of the conspiracy; or what actions Ms. Horton took showing that she was the actual leader of the conspiracy. The court does not need to hold a hearing on Ms. Hollis's unsupported generalization that these witnesses were mitigating witnesses that would have affected the court's ruling on the leader enhancement. *See Aron*, 291 F.3d at 715 n.6

Ms. Hollis has not reasonably alleged that she ever provided counsel with information about mitigating witnesses, so counsel acted reasonably by not calling those witnesses.

The court will DENY Ground 3.

### 3. *Ground 4: Failure to Follow "Obvious and Apparent" Leads that Implicated Other Persons*

Ms. Hollis contends that counsel unreasonably failed to investigate information that Ms. Horton was the leader of the conspiracy, and that this failure prejudiced Ms. Hollis because the court then sentenced her as the leader of the conspiracy. (Doc. 1 at 4; Doc. 7 at 5). The court disagrees.

Ms. Hollis alleges that she told counsel that Ms. Horton was the leader of the conspiracy, but again, Ms. Hollis relies only on her conclusory allegation that Ms. Horton was the leader of the conspiracy. Without any reasonably specific, non-conclusory *facts* about how Ms. Horton—and not Ms. Hollis—was the actual leader of the conspiracy or what Ms. Hollis specifically told counsel about Ms.

15

Horton, Ms. Hollis has not reasonably alleged that counsel acted unreasonably by not following this lead.

The court will DENY Ground 4.

### 4. *Ground 5: Failure to Investigate and Present Evidence Against the "Self-Proclaimed Leader" of the Conspiracy*

Ms. Hollis reframes her Ground 2 (failure to disclose evidence that Ms. Horton was the leader of the conspiracy) with Ground 5. She contends that she gave counsel the Facebook messages and the audio recordings that showed Ms. Horton was the leader of conspiracy, but that counsel was ineffective for failing to present this evidence to the court and the prosecutors. (Doc. 1 at 4; Doc. 7 at 5).

For the same reasons that Ms. Hollis's Ground 2 fails, her effectively identical Ground 5 fails. The Facebook messages do not suggest that Ms. Horton was possibly the leader of the conspiracy; Ms. Hollis has not reasonably alleged that Ms. Horton confessed to a leadership role in the audio recordings; and even if Ms. Horton confessed, Ms. Hollis would still qualify for the leader enhancement. So, counsel reasonably declined to act on the Facebook messages and the audio recordings and provide the materials to the court and the prosecutors.

The court will DENY Ground 5.

### 5. *Ground 6: Failure to Submit Exculpatory Evidence*

Ms. Hollis contends that counsel "knowingly withheld evidence that was favorable" to her, though she does not describe this evidence. (Doc. 1 at 4; Doc. 7

16

at 6). Her unsupported generalization that counsel failed to present some unknown evidence fails as conclusory. And assuming that Ms. Hollis intends to refer to the Facebook messages and the audio recordings, Ground 6 fails like her other grounds that rely on those materials. The Facebook messages do not suggest that Ms. Horton was possibly the leader of the conspiracy; Ms. Hollis has not reasonably alleged facts to show that Ms. Horton confessed to a leadership role in the audio recordings; and even if Ms. Horton confessed, Ms. Hollis would still qualify for the leader enhancement. So, counsel reasonably withheld the Facebook messages and the audio recordings.

The court will DENY Ground 6.

### 6. *Ground 7: Failure to Inform the Court that the Leader of the Conspiracy had Confessed to the Leadership Role*

Ms. Hollis's Ground 7 is effectively identical to her Grounds 2, 5, and 6; that is, that counsel never mentioned the Facebook messages or the audio recordings at the sentencing hearing. (Doc. 1 at 4; Doc. 7 at 6). So, like Grounds 2, 5, and 6, Ground 7 fails because the Facebook messages do not suggest that Ms. Horton was possibly the leader of the conspiracy; Ms. Hollis has not reasonably alleged facts to show that Ms. Horton confesses to a leadership role in the audio recordings; and even if Ms. Horton confessed, Ms. Hollis would still qualify for the leader enhancement. Counsel acted reasonably by not mentioning these materials.

The court will DENY Ground 7.

7. *Ground 8: Failure to Procure Statement from the "Self-Proclaimed Leader" of the Conspiracy after she Agreed to Meet with Counsel*

Finally, Ms. Hollis brings a *slightly* more specific version of Grounds 4 and 5 (failure to investigate Ms. Horton's leadership role) with Ground 8. She contends that Ms. Horton agreed to meet with counsel to give a statement, but counsel continually made herself unavailable to meet with Ms. Horton and never attempted to contact Ms. Horton. (Doc. 1 at 4; Doc. 7 at 6). But Ms. Hollis predicates Ground 8 on the same conclusory allegation in Grounds 2-7: that Ms. Horton was the "self-proclaimed leader" of the conspiracy. Because Ms. Hollis has not provided specific non-conclusory facts that Ms. Horton was the leader of the conspiracy, counsel reasonably declined to procure a statement from Ms. Horton.

The court will DENY Ground 8.

## III. CONCLUSION

By separate Order, the court will **RESERVE** Ground 1 for an evidentiary hearing and will **DENY** Grounds 2 through 8.

**DONE** and **ORDERED** this 19th day of November, 2018.

_____
**KARON OWEN BOWDRE**
CHIEF UNITED STATES DISTRICT JUDGE